C.S. Robledo # 379066
_Name and Prisoner/Booking Number_

Browning SMU
_Place of Confinement_

801 E. Jefferson St.
_Mailing Address_

Phoenix, AZ          85004
_City, State, Zip Code_

(Failure to notify the Court of your change of address may result in dismissal of this action.)

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

JUN 09 2026

ARTHUR JOHNSTON
BY                    DEPUTY

## IN THE UNITED STATES DISTRICT COURT

Craig Robledo-Valdez          ,
_(Full Name of Plaintiff)_

Plaintiff,

v.

(1) Mississippi Dept. of Corrections ,
_(Full Name of Defendant)_

(2) Burl N. Cain          ,

(3) Michael Dixon          ,

(4) James Moore          ,

Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

(5.) Scott Middlebrooks

(6.) Tamala King

(7.) Lisa M. Deiter

CASE NO. 3:26-cv-407-HTW-LGI
_(To be supplied by the Clerk)_

### CIVIL RIGHTS COMPLAINT
### BY A PRISONER

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

### A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983 AND RLUIP Act (18 USC § 3626)
   ☐ 28 U.S.C. § 1331; _Bivens v. Six Unknown Federal Narcotics Agents_, 403 U.S. 388 (1971).
   ☑ Other: PREA; 42 USC § 1985; and Diversity Jurisdiction.

2. Institution/city where violation occurred: MDOC (UGCF; MSP; CMCF)

550/555

Revised 12/1/20

1

## B. DEFENDANTS

1. Name of first Defendant: Mississippi DOC. The first Defendant is employed as: Mississippi Department of Corrections (Position and Title) at 301 N. Lamar St. Jackson, MS (Institution) 39201

2. Name of second Defendant: Burl Nathan Cain. The second Defendant is employed as: Director/Commissioner of MDOC (Position and Title) at 301 N. Lamar St. Jackson, MS (Institution) 39201

3. Name of third Defendant: Michael Dixon. The third Defendant is employed as: Superintendent (Position and Title) at UGCF Walnut Grove, MS (Institution) 39189

4. Name of fourth Defendant: James Moore. The fourth Defendant is employed as: Investigator (Position and Title) at UGCF Walnut Grove, MS (Institution) 39189

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?    ☑ Yes    ☐ No

2. If yes, how many lawsuits have you filed? 175. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: C.S. Robledo v. CDOC
      2. Court and case number: 16-cv-00192 (D. Colo. 2020)
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) Settlement

   b. Second prior lawsuit:
      1. Parties: C.S. Robledo v. CDOC
      2. Court and case number: 25-cv-03020
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)

   c. Third prior lawsuit:
      1. Parties: C.S. Robledo-Valdez v. CDOC
      2. Court and case number: 18CV260 (El Paso County, Colorado)
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?)

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2

B. DEFENDANTS

5.) Scott Middlebrooks; Superintendent at MSP (Parchman)
Parchman, MS  38738

6.) Tamala King; Warden at CMCF, R+C Unit
Pearl, MS    39288

7.) Lisa M. Deiter; Addiction Counselor at 9204 W. Ontario Dr.
Littleton, Co    80128

* ALL Defendants are herein sued in both their individual and official capacities.

## D.   CAUSE OF ACTION

### COUNT I

1.   State the constitutional or other federal civil right that was violated: First Amendment (Free Speech); Fourteenth Amendment (Equal Protection)

2.   Count I.   Identify the issue involved. ▆▆▆▆ State additional issues in separate counts.
☐ Basic necessities                 ☑ Mail              ☐ Access to the court      ☐ Medical care
☐ Disciplinary proceedings      ☐ Property       ☐ Exercise of religion      ☑ Retaliation
☐ Excessive force by an officer  ☐ Threat to safety   ☑ Other: Phone

3.   Supporting Facts.   State as briefly as possible the FACTS supporting Count I.   Describe exactly what each Defendant did or did not do that violated your rights.   State the facts clearly in your own words without citing legal authority or arguments.

On November 22, 2024, James Moore brought Plaintiff a fraudulent document created by Steven Maxwell with permission from Burl Cain. This document (Attached) was a fake restraining order which ordered Plaintiff to refrain from contacting Lisa M. Deiter, or ANY member of her family, under threat of reprisal and disciplinary action. (Attached)

From November of 2024 til September of 2025, MDOC staff honored this fake restraining order and utilized it to punish Craig Robledo, for Free Speech. James Moore, single-handedly charged Plaintiff with Class C (most serious) rule violations for C-14, "Unauthorized Communication", which does not fit the criteria for Robledo sending letters to Deiter or her husband.

Deiter did not submit a letter requesting "No Contact" from Plaintiff til February of 2025. She then forged other letters (Attached) posing as her sons and as her parents and as the Chatfield Highschool administration.

In July of 2025, she secured a permanent protection order for herself. It does not cover her parents or her husband.

(Deiter was in sexual relationships with offenders on her caseload, including Robledo, which violated PREA and resulted in her termination from CDOC.)

4.   Injury. State how you were injured by the actions or inactions of the Defendant(s).

Loss of sleep; loss of relationships; Loss of money; mental anguish; emotional distress; psychological harm; elevated hypertension; depression; malicious process in Colorado Courts from Lisa Deiter, helped by Defendants.

5.   Administrative Remedies:
   a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                  ☑ Yes   ☐ No
   b.   Did you submit a request for administrative relief on Count I?          ☑ Yes   ☐ No
   c.   Did you appeal your request for relief on Count I to the highest level?   ☑ Yes   ☐ No
   d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

COUNT I, (continued)

Deiter was angry at Robledo for reporting her to PREA auditors and investigators. She focused on preventing Plaintiff from alerting her husband of her affairs with Jason Jones (CDOC # 166986) and Robledo (CDOC # 145545).

Plaintiff had a well-established Right to send letters to ANYONE who does not have a valid protection order against him.
This included Deiter until she obtained one.
However, Moore charged Robledo 10 times with C-14 "Unauthorized Communication" despite being allowed to write Erik Contreras (the husband) and Michael Contreras (their 20 year old son).
As punishment, Plaintiff was unable to make phone calls for 6 months at WGCF and was kept in Supermaximum security Isolation (see Claim II.) until October 10, 2025.

In May and June of 2025, MDOC (Mike Dixon) subjected Plaintiff to Disciplinary hearings for non-existent rule "violations" for Free Speech. (Plaintiff had hearings each month, til July, 2025)

They also instructed their mailroom Sergeant (Crystal Roby) to hold /withhold all of Plaintiff's incoming Legal Mail for 5 to 10 weeks prior to delivering any to him. This caused him to miss numerous deadlines and to have various cases dismissed in both Colorado and Mississippi. (This was outrageous conduct).

From January of 2025 to July 3, 2025, Plaintiff was allowed 1 call. All due to James Moore and Mike Dixon preventing any phone calls on behalf of L. Deiter. (This too, is outrageous conduct)

From January of 2025 to October 11, 2025, MDOC, Burl Cain, and James Moore prevented any letters written by Robledo to 9204 W. Ontario Dr. in Littleton, Colorado from being sent out, and punished Robledo for each one. (Using disciplinary hearings.)
Now, all of those MDOC disciplinary actions are being utilized by Arizona DOC to increase Robledo's security level and keep him in detention. (Supermax)

Due to the nature of Deiter's CDoC position while Plaintiff was a CDoC offender on parole, this was a PREA violation.

Due to Plaintiff reporting Deiter and her sexual abuse of him as well as other parolees; every action, adverse or not, taken against Plaintiff by Deiter constitutes PREA retaliation.

By extension, Moore, Dixon, and B. Cain and their treatment of Plaintiff in unconstitutional ways on BEHALF of Deiter constitute henchmen and malicious actors and coconspirators of PREA abuse and PREA retaliation. The fake "order" purporting to be a lawful restraining order was authored by Steven Maxwell. However, Moore and Dixon run Walnut Grove prison — not Maxwell. Moore and Dixon solely and uniquely enforced and utilized the fake order against the Plaintiff as a weapon of oppression and used it to justify / legitimate their punishment and mistreatment of him.

Deiters' fake letters (which misspell February) purporting to be from various parties were created to deter and dissuade Plaintiff from telling people in Deiter's social circle about her adulterous affairs with he and 2 other offenders. (Notice she never posed as her husband, Erik Contreras.)

Even Maxwell's "order" is calculated to prevent contact with "any" member of Deiter's family, which is broad and violates the First Amendment and exceeds any legitimate purpose. Together, Deiter, Moore, Dixon, and Cain conspired to (and succeeded at) violating Plaintiff's Rights; silencing and muzzling him; and retaliating against him for reporting PREA violations and for exposing Deiter's' adultery.

This constitutes emotional distress, intentionally inflicted, by Outrageous Conduct, by Moore; Dixon; Deiter; and Cain from 11/20/24 to 11/26/25. Plaintiff has standing to sue under PREA and the Trafficked Victims Protection Act.

6

## COUNT II

1. State the constitutional or other federal civil right that was violated: _Eighth Amendment; Fourteenth Amendment; Fifth and Sixth Amendment_

2. Count II.  Identify the issue involved. ~~████~~    State additional issues in separate counts.
   - ☑ Basic necessities
   - ☑ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☑ Other: _Solitary Segregation_
   - ☐ Medical care
   - ☐ Retaliation

3. Supporting Facts.  State as briefly as possible the FACTS supporting Count II.  Describe exactly what each Defendant did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

(A.) From November of 2024 til August 8, 2025, Robledo was unlawfully kept in Solitary Confinement without Due Process and without cause.

(B.) During this time, despite MDOC policy (and Federal law) requiring at least 1 hour out-of-cell time every 48 hours; Plaintiff and others did NOT get such time out-of-cell. Robledo-Valdez was allowed recreation/yard in a Kennel outside every 10 to 14 DAYS. No more.

ISSUES:

(a.) Plaintiff did not receive any "placement" hearing nor detention hearing prior to or while living at WGCF / Supermax (Unit 6).
MDOC Policy 19-01-01 and 19-01-03 require such a hearing.
Federal case law also requires this.
Plaintiff's numerous disciplinary hearings were shams with no ability to call witnesses or summon them despite this being in policy (18-01-01).
He also was never allowed to see evidence being used against him.
Additionally, there was no impartial fact finder and NEVER sufficient evidence to support a finding of "guilt". (These occurred MONTHLY).
Plaintiff never violated a single MDOC rule/policy, yet was always found "guilty" because Moore, Dixon, and Cain instructed Daphne Ellis to find him "guilty". THUS did he receive NO DUE PROCESS in 2025.

4. Injury.  State how you were injured by the actions or inactions of the Defendant(s).
17 Months of torture in freezing cold isolation with no fresh air or sunlight.  Mental anguish. Disciplinary record now affecting plaintiff in Arizona DoC.  Emotional distress; hypertension; depression; severe weight loss.

5. Administrative Remedies.
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No
   b. Did you submit a request for administrative relief on Count II? ☑ Yes ☐ No
   c. Did you appeal your request for relief on Count II to the highest level? ☑ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

7

(6.) Plaintiff had a right to at least 1 hour outside of his cell, in a cage or kennel with at least 100 square feet of space, at least once every 48 hours.

Dixon and Moore only allowed 1 hour every 10 to 14 days. This was inhumane and unconstitutional.

Plaintiff filed grievances to no avail. He wrote directly to Commissioner Cain. He showed Dixon and Moore SoP 19-01-01 and 19-01-03. Cain allowed / condoned the unconstitutional 240 to 300 HOURS locked in a cell for every 1 hour out.

Once Cain transferred Plaintiff from WGCF to MSP Parchman, he was allowed 2 hours out of cell per day.

However, he was still trapped in Maximum security for no valid reason, without a classification hearing.

Per the Interstate Compact; Plaintiff is entitled to whatever Rights or privileges he would have in the "sentencing" state.

MDOC, at WGCF, via Dixon, Moore, and Cain, who operate the prison and promulgate its rules and practices; did not give Robledo ANY due process prior to detention placement (SMU) and its accompanying 7 months of Solitary confinement.

In Colorado DOC, offenders get at least 2 hours out of a cell per day. (Same in Arizona DOC).

MDOC, at, Supermax (Unit 6 - Walnut Grove) only allowed 1 hour every 10 to 14 days.

In CDOC, the Disciplinary officer cannot simply be told to find prisoners "guilty".

In MDOC, hearing officer Daphne Ellis confessed (on 3 occasions) that Dixon and Moore specifically instructed her to find Plaintiff "guilty" despite there being no evidence; the speech at issue being protected Free speech; and despite her personal belief that Robledo was NOT GUILTY of any Rule violations.

(C.) Craig S. Robledo-Valdéz (C.S. Robledo, Paralegal) has <u>No</u> Mississippi criminal cases; no Mississippi sentence; and has never broken/violated any Mississippi laws.

He never asked to nor agreed to go to Mississippi nor to serve time in the MDOC.

As such, MDOC and Burl Nathan Cain illegally held this Plaintiff hostage against his will, without his consent.

Absent consent, or acquiescence, from Robledo, MDOC cannot compel obedience from Plaintiff; nor discipline him in anyway; nor punish him. There is no valid, existing Mississippi criminal sentence giving MDOC any authority or custody over Craig Robledo-Valdéz.

Each day spent in MDOC, period, was illegal and unlawful and unconstitutional. Each day spent in detention/solitary confinement was even more illegal and shocks the conscience. Defendants — jointly and severally — engaged in repeated patterns of intentionally inflicting serious emotional distress upon Craig Robledo. They kidnapped him, held him hostage, and repeatedly violated his Rights; halting/sabotaging his personal and Legal mail; preventing phone calls for 6 months; and denying his Kosher diet and ability to shave or even leave his cell for fresh air or sunlight.

(Discovery will reveal exact dates. For now, Plaintiff herein attaches 2 "Activity Logs" from SMU at Walnut Grove CF.) All Claims/Counts together culminate in a totality which does, indeed create liability for MDOC and grants Plaintiff leave to sue and to seek remedy in Federal Court. (Being a Colorado inmate in MDOC triggers Diversity jurisdiction herein.)

9.

## COUNT III

1. State the constitutional or other federal civil right that was violated: <u>Eighth Amendment and Fourteenth and Sixth Amendment</u>

2. Count III. Identify the issue involved. ▰▰▰▰ State additional issues in separate counts.
   - ☑ Basic necessities
   - ☐ Disciplinary proceedings
   - ☐ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☐ Other: _____
   - ☑ Medical care
   - ☑ Retaliation

3. Supporting Facts. State as briefly as possible the FACTS supporting Count III. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

From November of 2024 to August 8, 2025, Craig Robledo was kept in Supermax Lockdown by MDOC.
(A.) From 11/20/24 to 07/02/25, this Solitary Confinement was imposed and controlled by Cain, Dixon, and Moore. This featured extremely cold temperatures of 50°F to 56°F all day, and 45°F at night, even in May and June, with no jacket or blankets. This featured outdoor time of 1 hour every 10 to 14 days, and 3 showers per week (on Mondays, Wednesdays, and Fridays). Robledo was not allowed to shave for his first 42 days at V6CF. Thereafter, it was once per month, and only in the shower. Plaintiff was malnourished and lost 25 pounds at V6CF despite hardly exercising.
Dixon and Moore would not allow Plaintiff to order ANY hygiene items nor stationery from November of 2024 to February of 2025. Thereafter, he could ASK another prisoner (a janitor/porter) to go type his order into a wall-mounted phone in the pod, since the Plaintiff could not use any phones nor access the phone ordering.

4. Injury. State how you were injured by the actions or inactions of the Defendant(s).
Vitamin A and D deficiency; hypertension; emotional distress; depression; weight loss; mental anguish; severed relationships; extreme hunger; loss or dismissal of various civil actions in Colorado and Mississippi.

5. Administrative Remedies.
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☑ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count III?  ☑ Yes  ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?  ☑ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

10

system by virtue of being in a pod for new arrivals where the inmate phone is never allowed.

Despite not being a new arrival, Plaintiff was kept in this New Arrival Zone by Dixon and Moore specifically so he could not make calls or order commissary or stationery.

In June and July of 2025 (05/31/25 to 07/02/25) Plaintiff was given a total of 3 hours recreation out of his cell.

At no point during or after any disciplinary hearing was Robledo "sentenced" to segregation or detention by DHO Ellis.

In fact, after 26 disciplinary convictions, Plaintiff never received sanctions which were detention; restrictive housing; or segregation.

Yet, Dixon, Moore and Cain Kept him in Solitary detention or "SMU" or "SHU".

(B) MSP "Parchman" has no ventilation; high decibel levels; and blackouts. From July 3, 2025 to October 11, 2025, Scott Middlebrooks and B. Cain Kept Plaintiff in Maximum Close custody at MSP (Parchman), Unit 29, where 6 electrical Blackouts occurred. From 07/02/25 to 08/08/25, however, Plaintiff was without a cellmate, and therefore, alone, in detention, without air-conditioning.

MSP Parchman, Unit 29, has no solid cell front. It's all bars, similar to Alcatraz. Ergo, it's extremely loud and dirty.

From 07/02/25 at 9PM to 08/08/25 at 5PM, Robledo was in a pod with feces on the floor; urine everywhere; mice, rats, and spiders. (Unconstitutional Conditions) Every 48 hours, angry prisoners with mental health issues would hurl feces and urine straight out of their cells at other inmates or at the floor/tier where it would accumulate and run into other cells, such as that of Plaintiff. Rain also leaked inside. Inmates would also smoke (MDOC allows cigarettes and lighters there). Plaintiff breathed smoke in all day long and coughed regularly.

Every day at MSP was horrendous. It featured 20 to 22 hours in a tiny cell with another person (who smoked); all bars and no solid cell front; 7 televisions at full volume (100%) from 7AM until 2AM (i.e., 19 hours) which exeeded 110 decibels all day when combined with inmates yelling. (Plaintiff had a cellmate from 08/08/25 to 10/10/25 at Parchman, and lived in H-Building.)

Blackouts and faulty fans resulted in Plaintiff and cellmate being sweaty and sticky all day. The shower water exceeded 200°F and was difficult to stand in. It burned skin red.

The amount of mice with hantavirus was alarming. They ate through Robledo's commissary every night as he slept, or tried to sleep. Even with earplugs and prescription Mirtazipine (Remeron), Plaintiff only achieved 5 hours of sleep per night, and usually not uninterrupted, as breakfast came around 4AM daily.

Plaintiff takes prescription medications for hypertension (blood) and cholesterol (tryglicerides) and anxiety. MSP, it's schedule and structure exacerbated all this, especially with _no_ ventilation, limited outdoor time; and over 75 men smoking "spice"; "weed"; and _meth_ and tobacco daily. With only 2 hours out of cell per day, and only 6 hours outside/outdoors offered weekly, and only 10 showers per MONTH (Mon, Wed, Fri, Tue., Thur, and _never_ on weekends; with weekly rotations ensuring no more than 3 showers per week); Plaintiff wanted to _die_ rather than continue living at MSP.

Unit 29 at MSP is completely inhumane and unconstitutional in every way. The buildings are condemned

Plaintiff suffered through 6 blackouts in total darkness and 98°F to 110°F indoors without air or wind. This was traumatic, and dangerous.

12

(C.) From 10/10/25 (arrival at CMCF for second time), until leaving on 11/26/2025, Warden Tamala King forbade use or possession of razors despite razors being sold on the prison commissary AND being allowed per policy for Close Custody and "Max" custody.

This prevented Plaintiff from shaving for a month.

Inmates in MDOC (and Colorado) have the Right to shave 3 times per week. King prevented this without cause or reason. By comparison, even in UGCF Supermax, razors were eventually allowed. In Close custody at MSP (Parchman), inmates buy and own razors even in detention / restrictive housing.

King had no authority nor power to ban / forbid razors.

King also kept cells in "R+C" (Receiving and Classification) below 60°F all day and night. Sometimes it was below 50°F at night despite being 70°F outdoors.

King disallowed enclosed / insulated food carts, thereby ensuring all food served to Plaintiff and the "pod" in which he lived was cold. She frequently disallowed or prevented outside "rec" / yard time; keeping inmates indoors for 2 to 4 days at a time. This violated policy and Plaintiff's Rights.

King's policies and practices amounted to cruel and unusual punishment.

As a Colorado DoC inmate with NO Mississippi sentence, who never agreed to go to Mississippi DoC, Plaintiff was not to be treated in such a fashion.

Without a valid Mississippi sentence from a Mississippi Court, EVERY day spent in MDOC in detention, Segregation, Max, or Close custody was illegal, unlawful, and unconstitutional.

13

COUNT IV

1. State or Federal Right Violated: First Amendment and Fourteenth Amend.
2. COUNT IV: Issue Involved: MAIL and COURT ACCESS
3. Supporting Facts: While at WGCF, controlled by M. Dixon; B. Cain; and J. Moore; Robledo was not permitted to receive magazines nor books. MDOC policy specifically allows news magazines and other magazines at ALL prisons. WGCF is included. However, Dixon and Moore — with no authorization — banned all incoming books and publications. They claim this is necessary to prevent drugs (like K2 or synthetic cannabis) from entering the prison. This is belied by the fact that 7 employees at WGCF, including Moore himself, and Crystal Roby, smuggle drugs and cellphones into WGCF every Month.

Either Way, the banning and rejecting of all of Plaintiff's Christian-based Conservative news magazines (the New American magazine) violated the *Turner (v. Safely)* test. It is irrational. This occurred from December of 2024 through July of 2025.

Additionally, Dixon and Moore would not let Robledo's non-legal mail be sent out by Sergeant Crystal Roby. If Robledo wrote any of his friends incarcerated in Colorado; if he wrote anyone related to Lisa Deiter or even mentioned her; or if he discussed financial matters in said letters; he received discipline and the letter was either returned to him or simply confiscated.

<u>All</u> incoming legal mail was purposefully kept in a box by Moore for 5 to 10 weeks. On 07/08/2025, Plaintiff received a box of around 40 unopened pieces of Legal Mail from WGCF, sent to MSP, delivered to his cell. All the mail was at least 3 weeks old. Some were 10 WEEKS old, from the U.S. District of Mississippi and from Colorado.

14

Thus did Moore and Dixon interfere with open cases and with active litigation from April 10, 2025 to July 8, 2025.

This caused dismissal of 6 cases between Colorado and Mississippi.

This resulted in $405 lost to this very Court in May of 2025 due to Robledo's lack of knowledge of the dismissal of 25-cv-0128-HTW. (D. Mississippi).

Newer attempts at suing MDOC (25-cv-0844) also failed due to repeated transfers and Plaintiff's inability to coordinate payment of the $405. (October 10, 2025, he got to CMCF. November 24 or 25, he was retrieved by extradition. December 2, Robledo arrived at Phoenix "Alhambra". And finally, on December 9, 2025, Plaintiff reached La Palma prison. Now, as of May 15, 2026, he is in Supermax SMU at Browning prison.) Both 25-cv-0128 and 25-cv-0844 were dismissed without prejudice. However, the span of months in between pushed certain claims into danger of being time-barred. (Should they be timebarred, it is the indirect fault of B. Cain and M. Dixon and J. Moore.)

It was established by 2022 that interference with Legal Mail (incoming or outgoing) is unconstitutional and interference with outgoing regular mail is only allowed in limited circumstances.

It is also well-established prisoners can receive magazines and publications directly from publishers unless they contain pornography or weapons designs.

Robledo was deprived of these Rights and privileges, by Dixon, Cain, and Moore, without cause and in a malicious, illegal manner.

COUNT V.

1. State and Federal Right Violated: First Amendment; Fourteenth Amendment; and Religious Land Use Institutionalized Persons Act.

2. COUNT V: Issue concerns Religion and Diet

3. Supporting Facts: Plaintiff has been a Messianic-Jewish Hebrew follower of Yahweh (יהוה), also called a "Hebrew Christian" since 1993, when he was 5 years old. For 15 years in Texas his 2 congregations were "Baruch HaShem" and "Beth Simcha" in San Antonio. From 2009 to present, his congregation has been "Our Hebrew Assembly" in Greeley, Colorado.

For these sincerely held Hebrew beliefs, Robledo always keeps his head covered with hat, beanie, yarmulke, or Keppah.

He also consumes Kosher food/meals, exclusively.

MDOC has a specific policy mandating and requiring "therapeutic" religious diets and medical diets.

This S.O.P. specifies that all religious "faith" diets must be honored. The entire time Robledo was in Mississippi, (06/19/2024 to 11/26/25) he never once received, nor was allowed, a Kosher diet or Kosher-approved meals. He submitted several grievances to no avail. He threatened to sue MDOC. In October of 2025, Deputy Warden Denise Bone told him to submit a proposed Kosher diet/meal menu. After submitting this, he was moved to Arizona DOC.

While at UGCF, of course, from 11/21/24 to 07/02/25, he was unable to receive a Kosher diet because Burl Cain doesn't have one. (MDOC has no actual Kosher diet. They simply tell inmates they don't serve pork, which is not the measure of a Kosher menu.)

Additionally, he had no headcoverings for most of 2025. MDOC forbade it. At MSP, from 07/02/25 to 10/10/25, there was no Kosher diet. Likewise, from 10/10/25 to 11/26/25, there was none at CMCF. Additionally, at no point in MDOC, for 15 months, was any Messianic service or Messianic-Jewish service available, and defendants wouldn't let Robledo start one at all.

16

## E.   REQUEST FOR RELIEF

1.) State the relief you are seeking: A JURY TRIAL.

(a.) $ 10,000 per day spent in Mississippi, from 11/20/24 to 11/26/25.

(b.) $ 7,000 per day unable to make phone calls.

(c.) $ 3,000 per incident where Moore or Dixon disallowed or blocked any incoming or outgoing mail.

(d.) $ 1,000 for each MDOC disciplinary report /accusation written or typed against /about Plaintiff.

(e.) $ 1,000 per day spent at Walnut Grove prison and /or MSP Parchman.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___June 1 2026___
           DATE

SIGNATURE OF PLAINTIFF

C.S. Robledo, Paralegal

___C.S. Robledo, Paralegal___
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.   If you need more space, you may attach no more than fifteen additional pages.   But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

17